You know, whatever you got left on the clock is yours. You sat down now, you have 9 minutes and 50 seconds. Thank you very much. Okay. What I'd like to do is emphasize three points with my argument today. First is that any time with guideline sentences, they are fact driven. The facts in this case simply don't support the enhancement under 2K21. It is now a B6, but at the time that the sentencing occurred, it was B5. This is a final fact, right? I'm sorry, Your Honor? It's a final fact. It is, Your Honor. And the judge here found? He found that the, well, the district court in this case said that the enhancement was valid for three felons. First, that Mr. Jimison has assaulted his girlfriend. The second, for the burglary of the house where the firearms were taken. And then the third was? No dispute as to the first two. I'm sorry? No dispute as to the first two. I don't believe so, Your Honor. I don't believe that either of those could predicate the enhancement. So I think that the court focused and it said, the court did say, the evidence shows by clear and convincing evidence that the defendant stole the guns, at least at the time with the intent of fighting it out with law enforcement, if he were caught. His statement was, I'm going to go Rambo. The facts of the case are pretty specific. After Mr. Jimison wakes up from his meth-induced stupor, he takes the guns, puts them in his car, he takes other items from the first ranch, and then drives to a second ranch where he knows the ranch hand. At that ranch, the family then goes into the basement and Bill Hecker and he go to the shop, which is some ways away from the house. But what do we do with his statement? I'm going to go Rambo? Yeah. Well, there has to be more. And our position is that there has to be more than simply, I'm going to go Rambo. Mr. Hecker admitted he didn't say he was going to fight it out with law enforcement. That was the inference that he took from it. What else would you take from it? Certainly you're not going to What's the other inference? Give another I'll-go-Rambo interpretation. You're not going to argue he's going to go rescue prisoners from Vietnam, are you? I'm not going to be a smart mouth with that. But the things Of course, Rambo didn't use guns, at least not when he was in this country. Rambo did it all with his hands. Absolutely. But the problem becomes is the things that Mr. Jimmison was doing contradict that statement. He makes that statement after he asks to use the phone, in which he can call the ranch owner and say, I'm sorry, I didn't use the gun. You know, it would be helpful. I did not get a clear picture of the sequence of events. Is there a clear picture of the sequence of events? I believe so, Your Honor. In reading through Mr. Hecker's statement in the sentencing hearing, I believe what happens is he gets to the ranch, he asks to use the phone. And so he, Jimmison Mr. Jimmison, I'm sorry. Jimmison then asks to use the phone. Mr. Hecker sends his family to the basement and they, Hecker and Jimmison, go to the shop. At the shop, he makes the phone call to the first ranch owner and saying, I have taken your guns. I'm sorry. I'll return the guns. At that point, then he says, I was going to go Rambo. So he pushed it in the past tense. I was going to. I believe so, Your Honor. I believe that's what is critical in the excerpts of what Hecker testifies to. Mr. Jimmison did not testify to anything. No, but that, I understand. I just, whoever, wherever we're getting the Rambo statement from, it's pretty critical if he said, I was going to or I am going to. But what, what, what does the record show? Page 63 of the record. He talked in reference of going Rambo. The problem, Your Honor, is that at the same time, he's showing them the guns in the front seat of the car and asking for assistance. The statement appears on 62. His only assertion is in the present tense. What tense is it? He was going to go Rambo. It's hard to tell what tense it is because this is the present and the guy is speaking. It is, Your Honor. And we don't know what past tense he's referring to. Right. And we would concede that, but I think that the actions of Jimmison at the time are fairly telling. At the time that he's talking about going Rambo, he's having Jim, Hecker, help him move the guns from the front seat of the car to the back seat of the, to the trunk of the car. And at the same time, he's called another friend, a mutual friend of Mr. Hecker's and Mr. Jimmison's to come get him, indicating he's leaving the car at that ranch with the guns safely ensconced in the trunk and the keys there. And I would ask that those actions in and of themselves show the intent of Mr. Jimmison. Well, the question is ultimately whether or not there was some point in time at which he had formed an intent to use the guns to shoot out police. This is just evidence. The statement is evidence. Whether there was some point in time when he had the guns or when he got the guns or when he stole the guns or when he loaded the guns in the car, where he had both the guns in his possession and an intent to use them. And unfortunately, the record doesn't tell us one way or the other, which would then cause— So you would say that that's just not enough to— It is not enough for that enhancement, Your Honor. Again, it's factually specific. And the court hung its hat on the going Rambo statement. All the other actions are exactly contradictory. That's the entire statement. How much are we talking about in terms of time for your client here? Well, the guidelines at the time that he was sentenced, Your Honor, we're talking about 33 months at the top into the guidelines, Your Honor. His guidelines when he was sentenced was 100 to 125 months. But with the statutory maximum of 120, they then become 100 to 120. He received 120 months. With the four levels off, he would go to 70 to 87. If you take the top of the guidelines, 87, it would be 33 months, Your Honor, which is approximately 30% of the sentence. So it's a substantial part of his sentence. Okay. Thank you. Thank you. Good morning, Your Honors. Eric Wolf, District of Montana. I'd like to make a threshold legal point about this guideline and how it's changed, and then I'll go to the record on go Rambo. First of all, this particular guideline was amended effective 2006, and under the amendment, the burglary alone is enough and would clearly qualify. We can't use the 2006 guidelines because this court held last fall in the United States versus Stevens that there's still an ex post facto issue, even though the guidelines are advisory, it's still an ex post facto issue. There's a circuit split on whether it is or is not an ex post facto issue. The Seventh Circuit has gone the other way. Now, before that guideline amendment, the circuits were, it was 3-3, and the Ninth Circuit had never weighed in on whether burglary would be enough standing alone. The commission sided with the three circuits that said that it was. So there is room on this record to rely on the burglary. It's kind of an archaic issue because now the guideline has been amended. Did the district court rely on the burglary? I didn't focus on this issue. The district court did not. The district court. Well, how could we rely on it if the district court didn't? Maybe the district court wouldn't choose to rely on it, right? Well, I think that. We can't affirm and exercise discretion on the basis that the district court didn't exercise discretion. I don't think it's an issue of discretion, Your Honor, because it's really, it could be an issue of harmless error. It could be an issue of affirming on any ground that's present in the record. But I think there's enough here on his intent to fight it out with law enforcement, and I'm happy to rely on that. I just wanted to give broader context because I think in our brief, we really did not spell out the broader context of this particular guideline. You know, usually not spelling out means waiving. Well, we did mention that the guideline had changed. Did you argue that we should use the 2006 version of the guideline? We can't because of U.S. v. Stevens last fall. Well, you certainly can. You can argue to preserve the point. You can argue because you want to go in bank. You can argue because you hope for certiorari. You can argue because you hope for a miracle. We have no aspirations that grand, Your Honor. I'm sorry? We do not have such grand aspirations. Well, let me ask you why this point isn't waived and why you haven't wasted three and a half minutes of our time now on something that's not even entitled to raise. I just wanted to give the Court context, Your Honor. Two and a half minutes. All I wanted to do was give the Court some context about this guideline and how it's changed and how this case is really a throwback. Well, I understand that you want to give us a guideline. We can talk about background all we want. But let's say we really like your argument. Isn't it waived? You know, all the background in the world. I mean, explain it to me. Okay. Tell them, no, you don't waive an argument if you don't want to challenge existing circuit law. But you could have said, I suppose, that circuit law does preclude it. That's why we're not arguing it. Then you would really clearly not have waived it. Circuit law does preclude applying the 2006 guidelines. It is an open question in this circuit whether burglary alone counts if you burglarize and steal firearms. Other circuits have held that, three of them, in fact. I just want to point that out. Let me go to the record on Go Rambo because I'm, like, content to rely on that. Yeah, on Rambo, I've been going back again over this, and I now realize that there is a bit of ambiguity here. I think it's fair to read the tense of what he was saying, that his hacker was saying, particularly when he was trying to recall. He was not, by his own testimony, was not being precise as he had a general recollection. Okay. So to make it all turn on, the verb was. This is not fair to infer from, and perhaps at least I thought the district court had done so, is that whatever may have been his present intent when he was talking to Hector, clearly it was acknowledging at some point in his activity that that's what he intended to do with the guns. He thought he'd killed his girlfriend. He'd been on the lam, and he had grabbed the guns because he planned to go Rambo. That's exactly right, Your Honor. Okay, and your argument is that that is sufficient. Right then. Even if he abandoned that intent and. . . If he's rummaging through that house trying to find firearms because he thinks law enforcement is after him, and let me point you to paragraph 13. But there's nothing about that. There's nothing about saying, wow, I took the firearms in order to go Rambo. There's nothing connecting that scenario you just painted. There's nothing to support that. Yes, there is, Your Honor. Paragraph 13 of PSR, page 5, he admits in his own interview with the probation officer that as he's fleeing from his girlfriend who's lying unconscious at the minimart, he is, quote, paranoid law enforcement was after him. He then goes to this house. Now, as he would have it. . . I'm sorry, which paragraph again? This is paragraph 13 of the PSR. Now, as he would have it, oh, I just went to that house to get some soda pop, and then I happened to pass out in my own vomit, and when I got up, for no reason at all, I just started rummaging around for firearms. Well, the record is. . . I'm sorry, what does he say he started rummaging around for firearms? He says he's paranoid law enforcement was after him. So he's. . . Well, that's very different from he's rummaging around for firearms. It is a piece of evidence. . . No, I'm sorry. . . . that suggests that going Rambo is tied to him fleeing from law enforcement. Where does it say he's rummaging around for firearms? Well, he burglarizes the house. Where does it say he's rummaging around for firearms? Does it say that? Does it say that? I mean, there's no question he burglarizes the house, Your Honor. I mean, he. . . There's a big difference between burglarizing a house and rummaging around for firearms. You understand the difference? One of them is you're looking for things to take a value that you might sell or use. The other one is saying I'm afraid of the police. I'm going to go look for a way to defend myself, okay? What you said, look at paragraph 13. It says he goes rummaging around for firearms. Now, there's nothing there saying that, is there? Correct, Your Honor. Okay. It says he was paranoid of law enforcement. Why don't we read it together? Do you have it in front of you? He was paranoid of law enforcement. Where is that? This is in the third sentence. He has beat his girlfriend unconscious. He's taken her car. He's driven to this house that he is unauthorized to enter. And he says he became paranoid. Law enforcement were after him. And, of course, he coped the way anyone would. He ate an additional two to three grams of methamphetamine. So then he goes into this house. And the question is why is he taking the firearms? And all I'm trying to say, Your Honor. . . Well, I don't know. Why is he taking firearms? Let me tell you what's in the record. Tell me what's in the record. I mean, one is go Rambo and whatever that means. Okay? But it's also his own statement. Paranoid of law enforcement? Perhaps that's why he took the firearms. There's no evidence that says he took them because he wanted to sell them and make money. Let me also point out. . . It's fairly common to steal firearms. Unlike television sets, they're easy to carry. They have great value. They can be sold on the black market. It's very common to have firearms stolen. Well. . . I mean, given what sort of people have in their houses these days that don't hold large quantities of cash, firearms actually turn out to be one of the more common things that are stolen during burglaries. Sure. But there's nothing here saying in the presence of. . . nothing that he said that connects the taking of the firearms with any use against law enforcement. Well, I think. . . Well, saying that he wanted to go Rambo does, and I don't think. . . But it's not here. You have to get back to your Rambo statement. There's nothing in this paragraph that helps you. Well, I think. . . It is a statement. It does not say he goes looking for firearms, as you pretended a little while ago. It does not say, I was paranoid, and therefore I was so glad to see the firearms and I grabbed them. It doesn't say anything like that. It is a statement of fact. He was paranoid of law enforcement, which naturally he would be since he committed crimes. And then he goes to the house, he sees the firearms, and grabs them. And he grabs other items, too, in addition to the firearms and ammunition. If I could make one more point from the record. . . That's correct, isn't it? Excuse me? There's guilt to his right. That he steals other items? Yes. Yes, he does. It's always good to say yes. Well, it's not always good, but. . . If it's true, it shows a certain amount of forthrightness. If I could just point you to one other part of the PSR. Paragraph 35 recounts his crime. This is from the summer of 04. This is before he's out in the city of Montana. He's over in Twin Bridges. Paragraph 34? Paragraph 35, I'm sorry, which is recounting the summer of 04. He, a cooperating defendant, tells a drug task force that he is hiding out, that Jimmison is hiding out, and he won't be apprehended without a fight. So this notion of fighting it out with law enforcement, it doesn't just come from the statement, go Rambo. Go Rambo is simply one more piece of evidence that this is his intent. He may have had an intent to fight it out in AD when this happened in 2004. A couple months ago. But the point is you have to have the intent and the possession at the same time. You have to have both at the same time. He could have the intent in 2004. It could be a later point in time he sees guns and he grabs them, not having formal intention what he's going to do with them. He's going to sell them or use them or whatnot. He says, well, here are guns. I'll think about what I'm going to do about them later and just grab them. It's possible, right? It's possible. It's possible. So if he doesn't have the intent at that point in time, he has not yet committed a crime. So if there's some point at which he has an actual intent while he possesses the crime, the guns, at that point he commits a crime. Correct. If he's possessing and he has the intent, the guideline applies. And I don't think the district could clearly hear. What point in time is that? Can you pinpoint it for me? It's shortly after he steals the firearms. And then later, you know, what's going on here? He tells Hecker, and this is at page 63 of the excerpt's record. There's nothing that he says that connects the Rambo statement or the fighting out or resistance statement to the guns. He never says, I've got the guns, I was going to go Rambo with the guns. There's nothing like that. I'm asking a question. I don't know how else to interpret going Rambo. I appreciate your point. Is there anything that says, that connects the going Rambo, resistance law enforcement statement with the guns? Anything where he actually says, I was going to use the guns? Well, when Hecker gives his written statement to law enforcement a couple days later, he says, Jimison told me he was going to shoot it out with law enforcement. Yeah, but he retracted that statement on the stand. You want to look at the transcript? He says that's not what he said. He said he didn't remember. No, he said that was his interpretation. And he knew that wasn't what he said. I don't know whether he knew it or not, or whether he just, his memory failed, or whether that is how he interpreted go Rambo. But it's pretty significant that the guy who's standing there talking. He says, Mr. Hecker, do you remember him specifically saying that? Answer, no. I don't remember him saying that. I don't remember. I don't believe, no, I don't believe he said it from my statement here. I just don't remember. I don't believe, Dash, he said it from my statement here. I just don't remember him saying it. And then at 65, 66, they go through, like, was your memory better then? Yes, to the best of your knowledge. Did you put any false statements in your written statement? So you're saying that he never clearly ruled it out. Right. Okay. He said he didn't remember. And he interpreted go Rambo clearly. I'm sorry. You think that he's now referring to a different statement than the Rambo statement? That when he says he's going to shoot it out of law enforcement, he's actually referring to a separate statement where Jim says, I was going to shoot it out of law enforcement? I think there are two possibilities, Your Honor. Oh, I guess there are three. How about you just answer my question? Because I don't know, Your Honor. I'm just laying out what the possibilities are. What is the United States' position on this? Do you think that when he said I'm going to shoot it out of law enforcement, he's referring to a separate statement by Jimmison that he's going to do that? It's not from the Rambo statement. It could have been. It could have been. That's what he put in his written statement immediately after the fact. But what he specifically remembers at the time of the hearing is that he said go Rambo. So he remembers Jimmison saying that by the time we get to the sentencing hearing. But they say, well, you have this written statement where you say he's going to shoot it out of law enforcement. Do you remember that? Okay, I think we understand your position. I thank you for coming in person. Would you like some rebuttal time? One always loses ground on rebuttal, you know. One always loses ground on rebuttal in my experience. Go ahead. I just want to be clear of one thing for Judge Guilford. When the pre-sentence report of the paragraph 13 where he says that he had assaulted his girlfriend in the bathroom, he then thought the police were chasing him, and that's when he fled the town. So the paranoia was prior to his even entering the house. He enters the house because he's sick. He ate two or three more grams of methamphetamine. He went there for water. That's pretty clear in the record. It's also pretty clear in the record that Mr. Hecker says, I interpreted the Rambo to shooting out. Okay, let me just understand your position. If we accept that all the PSR establishes is that he stole guns at a time when his state of mind reasonably connected to that activity was that he was paranoid about being chased by the police, and we don't have any Rambo statement, then you think you would win strongly on that basis? I do, Your Honor. Okay, but what happens when you add the Rambo statement, which indicates that he said at some point when he had the guns, because he was clearly referring to the guns, I think, that he was going Rambo. I don't know what Rambo would have, notwithstanding the notion that if we're really being literal to the movie, the fact is that it was in connection with his activity with Hecker and the guns. So at some point when he had those guns in his hands, and he obviously had changed his mind by the time he got to Hecker, if we accept it's all in the past, he said at some point, I was going to go Rambo. Now I've come to my senses. I've sobered up. I'm really screwed up. Then you win or lose. No, I don't believe so either, Your Honor, because he makes that statement after he has called the ranch. He already said in my question, I'm assuming that at some point, maybe he's made the call, but at some point if he said, I was going to go Rambo, and the district court could reasonably have interpreted that to mean that at some point when he had those guns in his possession, that was his state of mind. Your Honor, with all due respect to the district court, I don't believe they could reasonably say it. I think it's puffery, because at the same time that he's making that statement, he is transferring the guns to the trunk. How is that inconsistent with his having changed his mind? Well, that he never intended to do that. That it was just a big statement. Just a statement. Okay, I see. Well, it's two possibilities. He is making this puffery statement, as you call it. He never had any intent like that, but he wants to sort of justify his action or make himself seem important to his friend. You know, I had these guns and I was going to have a big shootout, but he never had such an intent. But the other possibility is he did. The other possibility is that, in fact, sometime between the time he took the guns and the time that he made the statement, there was one point in time when he's saying, I've got these guns with me, and if they corner me, I'm going to turn around and take as many of them with me as I can. I mean, he could have had that thought in mind. He could have, but the record simply doesn't support that. What do we do with the district court's finding? I believe that you need to find it was an abuse of discretion. Let me ask you something. Is it an abuse of discretion standard? No, I'm sorry. No, it's not. I think it's substantial evidence. I think it's what you want to say. The proper standard is cited in the brief. I'm sorry. Let me get from a slightly different angle. How firm an intention do you have to have in order to commit a crime? For example, if you say, you know, if just one of those guys crosses my threshold, I'm going to shoot him. Well, let's say there's no chance anybody will do that. I just, you know, if you're sitting at home and you're talking, you say, well, if a police ever crosses my threshold, let's say nobody's after you, if they ever enter my house, I'm going to shoot them dead. Is that enough to commit a crime? Let's say you have a gun, in fact. No, I don't believe so, Your Honor. I think that words can amount to a crime. Conspiracies, I'm going to shoot somebody. How specific does the intent? I mean, certainly if you're holed up in a house, you've got guns, and they say, you know, come up with your hand, you know, sort of a HUD situation or a cool hand look situation, right? Come up with your hands up, and you say, I've got guns here. I'm going to, you know, at that point, even if you don't shoot, you've committed a crime, right? Absolutely. What if you just sort of state a general intent? They'll never take me alive. They'll never take me alive. Is that enough to commit a crime? I don't believe so, Your Honor. I think you were right that rebuttal people tend to backslide, but I don't think you have to. I tried to help you out there. Another felony has to be a felony. And in the state of Montana, you have to put the law enforcement in fear or apprehension. The only person that Mr. Jemison makes this comment to is Mr. Hecker, who is not a police officer. The district court found that he was going to shoot it out with law enforcement. Therefore, the crime either is assaulting a police officer or the federal equivalent of it. And both of those crimes and elements of those crimes require the law enforcement officer to know about it. I can commit a conspiracy to do that with simple words and some preparation. I can assault the president. That doesn't really make a lot of sense. If I take, if I burglarize a house because I plan to shoot it out with the police, and then I have that ongoing present intent, there's no doubt about it, but I happen to be picked up at the shopping market while I'm going to buy provisions and when I'm about to take off into the hills, you're saying that that wouldn't be a crime because the police didn't know at the time that he had those guns? No, he's preparing. The person in your hypothetical is making actions to do that. Well, isn't that the theory that that's what happened here? Well, that may be a theory, but that's not what the facts in this case are. But your hypothetical is off, too, because this is a hypothetical felony. We're agreed on that. The future felony doesn't have to take place. Yes. So we don't need to have police knowledge and such because the actual felony doesn't exist. It's an anticipated felony. Well, except that the guidelines are in connection with another felony, and that's any state, local, or federal felony that's punishable by more than a year. But you don't have to meet all the elements of that felony because that felony need not take place. I don't know if the guidelines provide for that. Would it have been an attempt? I'm sorry? Would it have been an attempt? It could have been. Okay. I'm sorry. In answer to Judge Gilford, is it your position that he would have had to have a completed crime at the time he has the intent? He has the intent and he has the guns, but there's no cops in sight. And let's say he actually says, you know, I've got this gun and they'll never take me alive. I'll shoot the first one. I'll take as many of them with me as I can. But there are no cops in sight. There's nobody coming. There's no incident. There's no he's not cornered anywhere. He just made that statement. Has he committed a crime at that point? Potentially, he has. But the actions at the time. Has he committed a crime? Do you commit a crime if you have a gun and express an intent to use it to resist law enforcement? As a defense attorney, I'm going to say no. At that point, he has not committed a crime until he takes the one step further. Even if he swears on a stack of Bibles, that's my intent. You know, I really mean it. I'm not kidding. You know, if there were a cop out there right now, I'd shoot him this minute. No, I don't believe he has committed a crime. There's an Eighth Circuit case that says the guidelines do not require the actual commission of another felony offense. And that's an Eighth Circuit case. I think that applies in the Ninth Circuit as well. Would you agree with the statement that the guideline does not require the actual commission of another felony offense? No, I agree. It doesn't require the commission. But you have to have, for a felony to exist, there are, going back to my law school days, there are certain elements to each crime. And he hasn't. I would challenge the court to find the felony that he's committed. He hasn't at this point committed a felony. The one last thing, and with all due respect, you keep talking about burglary. But burglary requires the intent of the entry of the house. And there's nothing in this record, with all due respect, there's nothing in this record that says that he intended to steal anything when he entered the house. He was running from the police. He was sick. He drank water. There was no burglary. Thank you. Thank you, Your Honor. Thank you. Okay. Case is signed. You will stand submitted.
judges: Kozinski, Fisher, Guilford